## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE AMERICAN OUTDOORSMAN, INC.**<br>4049 Pennsylvania Avenue<br>Kansas City, Missouri 64111,<br><br>                Plaintiff<br><br>    v.<br><br>**SHADOW BEVERAGES AND SNACKS, LLC**<br>1860 West University Drive<br>Tempe, Arizona 85281-3247,<br><br>                Defendant | |

### COMPLAINT OF PLAINTIFF THE AMERICAN OUTDOORSMAN, INC.

Plaintiff The American Outdoorsman, Inc. ("Plaintiff" or "The American Outdoorsman"), complain of the Defendant Shadow Beverages and Snacks, LLC ("Defendant" or "Shadow Beverages") as follows:

### PARTIES

1.     Plaintiff The American Outdoorsman, Inc. is a Kansas corporation with its principal place of business located at 4049 Pennsylvania Avenue, Kansas City, Missouri 64111.

2.     Defendant Shadow Beverages and Snacks, LLC, upon information and belief, is an Arizona limited liability company with its principal place of business at 1860 West University Drive, Suite 114, Tempe, Arizona 85281-3247.

### JURISDICTION AND VENUE

3.     Because the parties are citizens of different states and because the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, this Court has

original jurisdiction over this action on the bases of diversity of citizenship and amount in controversy pursuant to 28 U.S.C. §1333(a).

4.     Venue is proper pursuant to consent and agreement by the parties as well as 42 U.S.C. §1391.

## FACTS

5.     The American Outdoorsman is a lifestyle brand with a 23 year history that explores, promotes, and showcases all areas of outdoor adventure, as well as the conservation and preservation of outdoor resources.  In addition to its national television show, syndicated radio show, Adventure Club and its online AOiTV on demand TV network, the company has licensed merchandise in apparel, headware, accessories, pet products, outdoor gear, publishing and sports equipment.

6.     Shadow Beverages is a beverage and snack foods company whose mission is to build a portfolio of beverage and snack consumer products in the fast growing and functional category markets.  Shadow Beverages works to methodically build their brand partners' reach outside their current platforms.

7.     In or about September 2011, Shadow Beverages was introduced to The American Outdoorsman for the purpose of working with The American Outdoorsman to develop, produce, market and sell the following under the American Outdoorsman trademark: RTD non alcoholic beverages, beef jerky, nutritional bars, trail mix and other snacks to be mutually agreed upon.

8.     After some negotiations, the parties entered into a licensing agreement dated October 18, 2011 ("Licensing Agreement"), whereby the parties agreed to a ten-year term, with a five-year renewal option, where Shadow Beverages would develop and market beverage and

food products identified with The American Outdoorsman brand. (A copy of the Licensing Agreement is attached hereto as Exhibit "A").

9.      Under paragraph 7 of the Licensing Agreement, in return for The American Outdoorsman giving Shadow Beverages the exclusive rights to use The American Outdoorsman name on its products, Shadow Beverages agreed to pay guaranteed royalties (among other payments such as advertising and promotions of 5% of net wholesale sales) over a ten year period totaling more than $5.6 million.  Specifically, payments were to be made quarterly with payments typically payable on January 31, April 30, July 31, and October 31 of each year, with the amount of payments escalating over the ten-year term.

10.      In the first year of the Licensing Agreement, Shadow Beverages was to make payments of $50,000.00 on July 31, 2012 and October 31, 2012.  In the second year, payments of $50,000.00 were due on January 31, 2013, April 30, 2013, July 31, 2013, and October 31, 2013.

11.      During the first eight months of the Licensing Agreement, the parties had productive and cordial relations, working together to develop particular products for The American Outdoorsman brand, such as jerky products and nutritional bars.  However, during this initial period, no payments were required so the relationship was primarily one of successful collaboration on the development of products featuring The American Outdoorsman name.

12.      In Section 5 of the Licensing Agreement, Shadow Beverages had market date/distribution responsibilities to begin product development for all licensed products upon execution of the agreement, introduce licensed products to the trade by April 1, 2012 and ship the licensed products to retailers no later than July 1, 2012.

3

13.     The first payment deadline of July 31, 2012 arrived and passed without Shadow Beverages making the agreed upon payment.  A copy of the July 31, 2012 invoice is attached hereto as Exhibit "B."

14.     When representatives of The American Outdoorsman inquired about the delinquency of the $50,000.00 payment due, representatives of Shadow Beverages assured them that the payment would be forthcoming.

15.     Despite repeated inquiries, Shadow Beverages failed to make the July payment.

16.     The second payment deadline of October 31, 2012 arrived and passed without Shadow Beverages making the agreed upon payment.  A copy of the October 31, 2012 invoice is attached hereto as Exhibit "C."

17.     Once again, when the representatives of The American Outdoorsman inquired about the delinquency of the two $50,000.00 payments, Shadow Beverages began to delay responding to and avoid The American Outdoorsman by not responding to multiple phone calls and emails.  On the rare occasions when The American Outdoorsman did reach Shadow Beverages, they would promise to put together a payment plan which never materialized.

18.     By January 2013, The American Outdoorsman had grave concerns about Shadow Beverage's commitment to honor the terms of the Licensing Agreement, due to the fact that guaranteed payments had not been made, no products had been produced and there was a significant lack of communication.

19.     Despite Shadow Beverages repeated promises that it would work to create a payment plan to address the current and past due payments,  the third payment deadline of

January 31, 2013 arrived and passed without Shadow Beverages making the agreed upon payment. A copy of the January 31, 2013 invoice is attached hereto as Exhibit "D."

20.     Paragraph 23 of the Licensing Agreement governs termination of the relationship between the parties. Paragraph 23(a) states (in relevant part) "If either Party at any time during the Contract Period of this Agreement (i) fails to make any payment of any sum of money herein specified to be made, …the non-defaulting Party may terminate this Agreement if such default is not cured within ten (10) calendar days after the defaulting Party will have received written notice specifying such default."

21.     After giving Shadow Beverages every opportunity to make the payments, and after not receiving even a partial payment, Peter W. Schloss, an attorney acting on behalf of The American Outdoorsman, in accordance with paragraphs 23 and 16 (notice provision) sent a letter dated February 7, 2013 to Shadow Beverages ("Notice of Default Letter") providing a notice of default as a result of the failure to pay a balance of $156,750.00 (three payments plus 1.5 % interest per month). A copy of the Notice of Default Letter is attached hereto as Exhibit "E."

22.     The February 7, 2013 Notice of Default Letter gave Shadow Beverages ten (10) days to cure the default, as permitted by the Licensing Agreement.

23.     Despite the Notice of Default Letter, and despite making repeated promises that payment would be forthcoming, Shadow Beverage failed to make any payment of any kind towards the past due balance.

24.     By failing to make the payments as demanded, Shadow Beverages failed to cure the default and breached the Licensing Agreement.

5

25.     By letter dated March 18, 2013, counsel for The American Outdoorsman, Arthur

D. Goldman, sent a letter notice to Shadow Beverages (the "Termination Letter") terminating the

Licensing Agreement in accordance with paragraphs 16 and 23. A copy of the Termination

Letter is attached hereto as Exhibit "F."

26.     As a result of the failure by Shadow Beverages to meet its payment obligations

under the Licensing Agreement, The American Outdoorsman has suffered damages in excess of

$156,750.00.

27.     Moreover, under the terms of the Licensing Agreement in paragraph 23(g), "Upon

the termination of this Agreement, notwithstanding anything to the contrary herein, all rights

licensed to Company under this Agreement immediately revert to Licensor without any further

notice and all unpaid Guaranteed Royalty payments and any other payments due Licensor,

including reimbursements and Earned Royalty payments, for the Contract Period shall be deemed

to be fully earned and shall be paid within five (5) days from the effective date of termination.

28.     Pursuant to paragraphs 7 and 23(g), the total value of Guaranteed Royalty

payments due as damages equals $5.6 million.

29.     Paragraph 8 entitles The American Outdoorsman to receive Earned Royalty

payments based upon nine (9%) percent of Net Wholesale Sales.

30.     Under paragraph 23(g) Shadow Beverages also owes The American Outdoorsman

Earned Royalty payments and reimbursements in amount yet to be determined.

31.     As a result of The American Outdoorsman's now terminated relationship with

Shadow Beverages since October 2011 through the present, it has lost time and valuable

opportunities to partner with other potential licensing partners which has given rise to additional damages.

## COUNT I

## **BREACH OF CONTRACT**

32.     Plaintiff hereby incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

33.     Pursuant to the terms of the Licensing Agreement, Shadow Beverage was obligated to make multiple payments to The American Outdoorsman.

34.     Shadow Beverages has breached the Licensing Agreement by failing to pay to The American Outdoorsman the Guaranteed Royalty and Earned Royalty payments, which at a minimum totals $156,750.00 to date.

35.     In contrast, The American Outdoorsman has fully complied with all of its obligations under the Licensing Agreement.

36.     As a direct and proximate result of the Shadow Beverage's conduct, The American Outdoorsman has and shall sustain monetary damages including attorneys' and related litigation costs and other damages to be established at the trial of this matter.

37.     In addition, pursuant to the terms of the Licensing Agreement, The American Outdoorsman is entitled to accumulated Guaranteed Royalty and Earned Royalty payments totaling at least $5.6 million with specific totals yet to be determined.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for:

(1)     Compensatory damages;

(2)     Additional Contract damages;

7

(3)     Counsel fees and court costs; and

(4)     Such other and further relief as this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

By: _____

Arthur D. Goldman, Esquire
Attorney for Plaintiff
P.O. Box 115
Paoli, Pennsylvania 19301
(484) 343-2856

## CERTIFICATION

I, Arthur D. Goldman, Esquire, attorney for Plaintiff The American Outdoorsman,

pursuant to 28 U.S.C. §1746, herby certify under penalty of perjury under the laws of the United

States of America that the foregoing Complaint is true and correct to the best of my knowledge,

information and belief.

Arthur D. Goldman

Dated: March 22, 2013