IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE AMERICAN OUTDOORSMAN, INC., <br> Plaintiff, <br><br> vs. <br><br> SHADOW BEVERAGES AND SNACKS, LLC, <br> Defendant. | Civil Action No. 13-443 <br> Chief Magistrate Judge Maureen P. Kelly <br><br> Re: ECF Nos. 61, 65 |

## OPINION

**KELLY, Chief Magistrate Judge**

This single count breach of contract action stems from the failure of Defendant Shadow Beverages and Snacks, LLC ("Shadow Beverages") to perform under a License Agreement it entered into with Plaintiff American Outdoorsman, Inc. ("American Outdoorsman") in October of 2011.

Presently before the Court is a Motion for Partial Summary Judgment submitted on behalf of Defendant Shadow Beverages, ECF No. 61, and a Motion for Summary Judgment submitted on behalf of Plaintiff American Outdoorsman. ECF No. 65. For the reasons that follow, Shadow Beverages' Partial Motion for Summary Judgment will be denied and American Outdoorsman's Motion for Summary Judgment will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

It appears undisputed that American Outdoorsman is a small media company that creates hunting, fishing and outdoor adventure programing and that Shadow Beverages is a limited liability company that works to cross market brands in the beverage and snack foods industries through licensing programs, building products and taking them to market. It is also undisputed

that American Outdoorsman and Shadow Beverages entered into a License Agreement ("the Agreement") on October 18, 2011, whereby American Outdoorsman granted Shadow Beverages the right to use American Outdoorsman's name and logo "on and in connection with the development, advertising, promotion, marketing, distribution, sale use and other exploitation of ... all RTD non-alcoholic beverages, beef jerky, nutritional bars, trail mix and other snacks to be mutually agreed upon." ECF No. 68-1, p. 2.  In return, Shadow Beverages agreed, *inter alia*, to make Guaranteed Royalty payments to American Outdoorsman on a quarterly basis.  The Agreement provided that the first three Guaranteed Royalty payments, each in the amount of $50,000.00, were to be made to American Outdoorsman on July 31, 2012, October 31, 2012, and January 31, 2013.  Id. at p. 6.  Shadow Beverages concedes that it did not make any of these payments.  ECF No. 75: p. 7, ¶ 15; p. 9, ¶ 19; pp. 11-12, ¶ 23.  Consequently, in accordance with the terms of the Agreement, American Outdoorsman provided Shadow Beverages with a written Notice of Default in a letter dated February 7, 2013.  ECF No. 68-3.  When Shadow Beverages failed to cure the default within ten days after receiving the Notice of Default, American Outdoorsman terminated the Agreement in a Termination Letter dated March 18, 2013.  ECF No. 68-4.

American Outdoorsman filed the instant Complaint on March 25, 2013, bringing a claim for breach of contract (Count I).  ECF No. 1.  Shadow Beverages filed an Answer to the Complaint, ECF No. 3, on April 22, 2013, which was followed by a period of discovery.  Thereafter, on March 18, 2014, American Outdoorsman filed a Redacted Motion for Summary Judgment, along with a Brief in Support of Motion for Summary Judgment and a Redacted Concise Statement of Material Facts.  ECF Nos. 48-51.  On March 25, 2014, these same

documents were refiled under seal in their un-redacted form. ECF Nos. 65-68. Similarly, on March 19, 2014, Shadow Beverages filed a Motion for Partial Summary Judgment, a redacted Brief in Support of Motion for Partial Summary Judgment, a redacted Concise Statement of Material Facts and an Appendix to its Motion for Partial Summary Judgment, ECF Nos. 52-55, which were refiled un-redacted and under seal on March 20, 2014. ECF Nos. 61-64. Because the parties requested, and were granted, leave to file their respective dispositive motions under seal, the sealed Motions filed at ECF Nos. 61 and 65, are the operative Motions. See ECF Nos. 47; 3/13/2014 Text Order.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating to the court that there is an

3

absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007), *quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

## III.  DISCUSSION

As previously discussed, it is undisputed in this case that Shadow Beverages breached the Agreement by failing to develop and market the licensed brands and by failing to make any of the Guaranteed Royalty payments provided for in the Agreement. It is also undisputed that Shadow Beverages is liable to American Outdoorsman for the three Guaranteed Royalty payments that were past due when American Outdoorsman terminated the Agreement in March of 2013. What is in dispute is whether Shadow Beverages is also liable to American Outdoorsman for the remainder of the Guaranteed Royalty payments itemized in the Agreement that had not yet become due when the Agreement was terminated. At the core of the controversy is the interpretation of the Termination provision contained in the Agreement which provides that:

> 23. <u>Termination</u>. (a) If either Party at any time during the *Contract Period* of this Agreement (i) fails to make any payment of any sum of money herein specified to be made, or (ii) fails to observe or perform any of the covenants, agreements, or obligations hereunder (other than the payment of money and except as otherwise provided in Paragraph 23(b) (d) and (e) below), the non-defaulting Party may terminate this Agreement if such default is not cured within ten (10) calendar days after the defaulting Party will have received a written notice specifying such default.
>
> \* \* \*
>
> (g) Upon the termination of this Agreement, notwithstanding anything to the contrary herein, all rights licensed to [Defendant] under this Agreement immediately revert to [Plaintiff] without any further notice and *all unpaid Guaranteed Royalty payments and any other payments due [Plaintiff]*, including reimbursements and Earned Royalty payments, *for the Contract Period shall be deemed to be fully earned and shall be paid to [Plaintiff]* within five (5) days from the effective date of the termination.

ECF No. 68-1, pp. 13-14 (emphasis added). The Contract Period is defined in the Agreement as "the Initial Term and Renewal Term (if any) collectively." ECF No. 68-1, p. 2.[1] In turn, the Initial Term is defined as "that period of Ten (10) Contract Years commencing on the Effective Date and terminating on December 31, 2022, *unless terminated earlier in accordance with this Agreement*." <u>Id.</u> (emphasis added).

American Outdoorsman argues that by definition the Contract Period for which the Guaranteed Royalties are due is the full ten year life of the contract as contemplated by the parties when they entered into the Agreement, and that Paragraph 23(g) constitutes an acceleration clause under which all ten years of Guaranteed Royalty payments set forth in the Agreement are deemed fully earned and owed to American Outdoorsman. <u>See</u> ECF No. 68-1, pp. 6-7. American Outdoorsman therefore contends that Shadow Beverages is liable for the over

$5 million dollars American Outdoorsman would have received had all the Guaranteed Royalty payments delineated in the Agreement been made. Shadow Beverages, on the other hand, focuses on the language in the definition of Initial Period, which states that the Contract Period is ten years "unless terminated earlier in accordance with this Agreement," and argues that because American Outdoorsman terminated the Agreement prior to the termination date of December 31, 2022, the Initial Term expired on the date that American Outdoorsman terminated the Agreement or on March 18, 2013. Shadow Beverages therefore concludes that it only owes American Outdoorsman the three Guaranteed Royalty payments due as of March 18, 2013, or $150,000.00.

It is well settled that "[i]n construing a contract, the court is to determine the intent of the contracting parties." Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc., 2010 WL 4929076, at *3-4 (W.D. Pa. Nov. 30, 2010), *citing* Homart Dev. Co. v. Sgrenci, 443 Pa. Super. 538, 662 A.2d 1092, 1097 (1995). To determine the intent of the parties in a contract that is unambiguous on its face, the court should first look to the words contained in the contract, id., as courts "do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d. 229, 243 (2008). Thus, to ascertain the intent of the parties, courts are to consider the contract as a whole and not merely individual terms. Gillin v. Universal Underwriters Ins. Co., 2011 WL 780744, at *6 (E.D. Pa. Mar. 4, 2011). Courts therefore "will not interpret one provision of a contract in a manner which results in another portion being annulled." Kamco Indus. Sales, Inc. v. Lovejoy, Inc., 779 F. Supp. 2d 416, 427 (E.D. Pa. 2011), *quoting* LJL Transp., Inc. v. Pilot Air Freight Corp., 599 Pa. 546, 962 A.2d 639, 647-48 (2009).

---

[1] Because the Agreement was obviously never renewed, the latter language does not apply.

Moreover, "[a] Court [should] adopt the interpretation which, under all circumstances of the case, ascribes the most reasonable, probable and natural intention of the parties, bearing in mind the objects manifestly to be accomplished." Gillin v. Universal Underwriter's Ins. Co., 2011 WL 780744, at *5, *quoting* Galvin v. Occidental Life Ins. Co., 206 Pa. Super. 61, 211 A.2d 120, 122 (Pa. Super.1965). See Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 96 (3d Cir. 2001) ("if the plain meaning of a contract term would lead to an interpretation that is absurd and unreasonable, Pennsylvania contract law allows a court to construe the contract otherwise in order to reach 'the only sensible and reasonable interpretation' of the contract").[2]

In this case, looking at the Agreement as a whole and giving effect to all of its terms, the Court finds that the only reasonable interpretation of Paragraph 23(g) is that it is an acceleration clause that obligates Shadow Beverages to pay American Outdoorsman all ten years of Guaranteed Royalty payments as set forth in the Agreement. The plain language of Paragraph 23(g), which is part of the Termination provision, sets forth certain rights "*[u]pon termination* of this Agreement," and thus necessarily contemplates rights and obligations that arise following termination of the Agreement. Indeed, Samuel Jones, the co-founder and presently the Director of Innovation at Shadow Beverages, see ECF No. 68-7, pp. 13-16, acknowledged in his deposition testimony that the provision applies only after the Agreement is terminated by one of the parties. ECF No. 68-7, pp. 57-58. Thus, Shadow Beverages' argument that Paragraph 23(g) somehow does not apply because the Agreement had been terminated by American Outdoorsman is not only nonsensical by would render Paragraph 23(g) completely meaningless.

---

[2] It should be noted here that neither party has argued that the Agreement is ambiguous but rather have taken the position that they merely disagree on its proper interpretation. See Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d at 93 (a contract is not rendered ambiguous merely because the parties do not agree upon the proper

In addition, Paragraph 23(g) requires payment of all unpaid Guarantee Royalties for the Contract Period or the Initial Term which, by definition, is the ten years that the parties anticipated that the Agreement would be in effect. Although Initial Term is defined as ten years "unless terminated earlier in accordance with this Agreement," the modifying language does not negate the fact that Paragraph 23(g) itself provides for payment of all Guaranteed Royalties upon termination of the Agreement. Moreover, Paragraph 23(g) requires payment of Guaranteed Royalties for the Contract Period "*notwithstanding anything to the contrary herein*." Thus, under the terms of the Agreement, Paragraph 23(g) takes precedence and, regardless of how Initial Period is defined, all the unpaid Guaranteed Royalties are owed to American Outdoorsman upon termination of the Agreement.

Furthermore, the language *deeming* all unpaid Guaranteed Royalties "to be fully earned" upon termination of the Agreement further evidences that Paragraph 23(g) was intended to be an acceleration clause. If the Guaranteed Royalty payments were limited to only those payments owed prior to the termination date, the language *deeming* them fully earned would be superfluous because those payments were already earned. It is therefore clear, giving full meaning to all the provisions of the Agreement, that the parties intended for Paragraph 23(g) to be an acceleration clause whereby Shadow Beverages would be obligated to pay American Outdoorsman all of the Guaranteed Royalty payments set forth in the Agreement in the event that Shadow Beverages breached the Agreement and American Outdoorsman exercised its right to terminate the Agreement as a result.

---

construction, nor may a court rely upon an unreasonable interpretation to create ambiguity).

Shadow Beverages' arguments to the contrary are not persuasive. First, Shadow Beverages suggests that, because the cases cited by American Outdoorsman for the general proposition that acceleration clauses are enforceable under Pennsylvania law involve mortgage loans and real estate transactions (which in and of itself is incorrect), the use of acceleration clauses are somehow limited to those two situations. See Royal Bank of Pa. v. 1600 Walnut St. Associates, 1991 WL 78189, at *2 (E.D. Pa. May 7, 1991); Weinberger v. Blair Mill Ltd., 1991 WL 127045, at *2 (E.D. Pa. July 10, 1991); Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc., 2010 WL 4929076, at *6. Not only was an equipment lease at issue in Kingsly, and not a mortgage or real estate lease, but none of these cases state that the use of an acceleration clause is limited to any particular type of contractual agreement. Moreover, not only has Shadow Beverages failed to provide the Court with any cases that do restrict the application of acceleration clauses to particular contracts, but such clauses have clearly been recognized and enforced in contract agreements other than mortgage loans and real estate transactions including license agreement like that at issue here. See id. (enforcing acceleration clause in the lease for a natural gas compressor). See also Nat'l Audubon Soc'y, Inc. v. Sonopia Corp., 2010 WL 3911261, at *2-3 (S.D.N.Y. Sept. 1, 2010), *Report and Recommendation adopted by* 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010) (enforcing an acceleration clause regarding minimum guaranteed royalty payments in a license agreement); Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc., 2009 WL 1054830, at *6 (S.D.N.Y. April 17, 2009) (finding that the guaranteed minimum royalties provided for in the License Agreement were "simply the sum of the minimum royalties due under the contract for the unexpired term of the contract at the time of the breach and thus represented "the *minimum* amount [the plaintiff] stood to gain from the remainder of the

9

contract); <u>Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.</u>, 2006 WL 728407, at *3 (S.D.N.Y. Mar. 21, 2006) (finding that under the terms of the License Agreement, "the defendant agreed that, upon default, it would pay, in an accelerated fashion, all royalty payments due under the License Agreement" and awarding "the minimum amount of royalty payments to which [the plaintiff] would have been entitled during the entire term of the parties' contract"); <u>Paramount Pictures Corp. v. Johnson Broad. Inc.</u>, 2006 WL 367874, at *7 (S.D. Tex. Feb. 15, 2006) (enforcing acceleration clause in a License Agreement).

Second, Shadow Beverages contends that Paragraph 23(g) cannot be a liquidated damages clause because it applies to both parties and thus would require Shadow Beverages to pay all of the Guaranteed Royalty payments to American Outdoorsman even if American Outdoorsman was the party who defaulted and Shadow Beverages had terminated the Agreement. Shadow Beverages argues that interpreting Paragraph 23(g) as a liquidated damages clause would therefore not only allow American Outdoorsman to benefit from its own bad behavior but would effectively eliminate Shadow Beverages' ability to terminate the Agreement -- even if American Outdoorsman defaulted -- without having to pay American Outdoorsman over $5 million dollars.

Interestingly, to support its position, Shadow Beverages points to the deposition testimony of Timothy Rothwell, an owner and the previous President and CEO of American Outdoorsman, <u>see</u> ECF No. 63, p. 2, ¶ 7; ECF No. 79, p. 2, ¶ 7; ECF No. 64, p. 28, in which he testified that, although Paragraph 23 applies to both American Outdoorsman and Shadow Beverages, subsection 23(g) would not apply or obligate Shadow Beverages to pay the Guaranteed Minimum payments if American Outdoorsman breached the Agreement thereby

10

causing Shadow Beverages to terminate it. ECF No. 64, pp. 42-45. Indeed, as argued by American Outdoorsman, such a result would be unreasonable -- even absurd -- and is clearly not a result intended by the parties.

Third, Shadow Beverages argues that, even if Paragraph 23(g) can be interpreted as an acceleration clause, it is unconscionable and thus not enforceable.

To prove unconscionability under Pennsylvania law, the party challenging the contract provision must show that it is both procedurally and substantively unconscionable. Romero v. Allstate Ins. Co., ___ F. Supp. 2d. ___, 2014 WL 4966147, at *12 (E.D. Pa. Oct. 6, 2014), *citing* Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012).

> "Procedural unconscionability examines the process leading to the formation of the contract and the form and language of the agreement." *Porreca v. Rose Grp.*, No. Civ.A.13–1674, 2013 WL 6498392, at *7 (E.D. Pa. Dec. 11, 2013). A procedurally unconscionable contract bears a lack of meaningful choice in the acceptance of the challenged provision. *Quilloin*, 673 F.3d at 235. Such contracts are typically "contracts of adhesion," which are defined as "a standard-form contract prepared by one party, to be signed by the party in the weaker position, usually a consumer, who adheres to the contract with little choice about the terms." *Id.* (quotation omitted).
>
> \*   \*   \*
>
> "Substantively unconscionable terms are those that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* (*quoting Estate of Hodges*, No. Civ.A.12–1698, 2013 WL 1294480, at *6 (E.D. Pa. Mar. 29, 2013)). "To establish substantive unconscionability, the plaintiff must show that the contract terms are unreasonably favorable to the drafter and that the other party had no meaningful choice but to accept those terms." *Cronin v. Citifinancial Servs., Inc.*, No. Civ.A.08–1523, 2008 WL 2944869, at *3 (E.D. Pa. July 25, 2008).

Id.

Here, Shadow Beverages does not specifically address the procedural prong of unconscionability, but implies elsewhere in its Brief and Statement of Material Facts that it lacked a meaningful choice in arriving at the terms of the Agreement because Timothy Rothwell testified at his deposition that the Agreement is "basically a boilerplate license agreement" that he has used previously. ECF No. 64, pp. 38-39. The fact that the same agreement has been used by Mr. Rothwell in contracting with other licensees, however, does not mean that Shadow Beverages did not have the opportunity to negotiate or renegotiate its terms -- including Paragraph 23(g). Indeed, Samuel Jones and George Martinez, co-founder and presently the President and CEO of Shadow Beverages, see ECF No. 68-9, p. 12, acknowledged at their depositions that they had an opportunity to review and propose revisions to the terms of the Agreement and that the Agreement was also reviewed by counsel. ECF No. 68-7, pp. 40-41; ECF No. 68-9, pp. 30-31; ECF No. 75, p. 4, ¶ 8. Moreover, it is undisputed that the template for the Agreement was previously used as the template for a license agreement entered into by Shadow Beverages and GNC. ECF No. 66, p. 3, ¶ 9; ECF No. 75, pp. 3-4, ¶ 9. Shadow Beverages therefore was aware of the language used in Paragraph 23(g) before entering into the Agreement with American Outdoorsman. In addition, without any protestations from Shadow Beverages, American Outdoorsman has categorized Shadow Beverages as a sophisticated business entity with expertise in the licensing industry. Under these circumstances, Shadow Beverages' failure to take advantage of the opportunity to voice objections or propose revisions to the Agreement does not mean that Shadow Beverages did not have a meaningful choice regarding the language of Paragraph 23(g).

With respect to substantive unconscionability, Shadow Beverages reiterates its argument that Paragraph 23(g) grossly favors American Outdoorsman because, under its terms, Shadow Beverages would be required to pay American Outdoorsman all of the remaining Guaranteed Royalties even if American Outdoorsman was the breaching party. To be substantively unconscionable, however, the term objected to must be one to which the disfavored party did not assent and had no meaningful choice but to accept. As already discussed, the record shows that Shadow Beverages had the opportunity to negotiate the terms of the Agreement, including Paragraph 23(g), and, having voiced no objection, assented to its terms.

Shadow Beverages also argues that Paragraph 23(g) is substantively unconscionable because under Vino 100, LLC v. Smoke on the Water, LLC, 864 F. Supp. 2d 269, 285-86 (E.D. Pa. 2012), I Can't Believe It's Yogurt v. Gunn, 1997 WL 599391, at *22-25 (D. Colo. Apr. 15, 1997), and Postal Instant Press, Inc. v. Sealy, 43 Cal. App. 4th 1704, 1713-14 (Cal. Ct. App. 1996), American Outdoorsman is not entitled to future royalties. These cases, however, are easily distinguishable. Not only were there no acceleration clauses in the various franchise agreements at issue in these cases but the royalty payments in question were not Guaranteed Royalty payments as are at issue in this case. To the contrary, all three of these cases were concerned with the licensor's ability to collect future royalties in the form of lost profits from anticipated sales after the franchise agreements were terminated. In Sealy, which the courts in both Vino 100 and I Can't Believe It's Yogurt relied upon, the court found that, while there was a natural and direct causal connection between the franchisee's breach of the agreement and the loss of *past* royalty payments, thereby entitling the franchisor to recoup those losses, the loss of *future profits* was not causally connected to the franchisee's breach but rather was caused by the

13

franchisor's termination of the agreement. Sealy, 43 Cal. App. 4th at 1710-11. Because nothing about the franchisee's failure to pay past royalties prevented the franchisor from receiving its future royalty payments, even if the franchisor had to sue in order to obtain them, the court found that it was the franchisor's own decision to terminate the franchise agreement that deprived it of any future profits and declined to find that the defendant was liable for future loss profits. Id.

In this case, however, the Guaranteed Royalty payments that American Outdoorsman seeks to recoup are not loss profits from anticipated, but unrealized, future sales. Rather, by definition, the Guaranteed Royalties constitute "compensation" to American Outdoorsman for granting Shadow Beverages the right to use the American Outdoorsman name and logo in the development, manufacture and sale of certain products and merchandise. ECF No. 68-1, p. 5. Moreover, the dates the Guaranteed Royalties were due and the specific amounts due on those dates are expressly set forth in the Agreement. ECF No. 68-1, pp. 6-7. Thus, unlike in Sealy, there is a natural and direct causal connection between Shadow Beverages' breach of the Agreement and American Outdoorsman's loss of the Guaranteed Royalties. The fact that the compensation Shadow Beverages owed to American Outdoorsman for the right to use its name and logo was set to be paid over the anticipated ten year life of the Agreement, does not lessen American Outdoorsman's entitlement to them and does not render the Guaranteed Royalty payments future profits simply because they became due after the Agreement was terminated.[3]

---

[3] Indeed, the Agreement contemplates the payment of future profits, *i.e.*, Earned Royalties, separately from Guaranteed Royalty payments. ECF No. 68-1, p. 7. Moreover, Plaintiff has represented in its Brief that, if successful on its Motion for Summary Judgment, it will not seek Earned Royalty payments but will be satisfied with the payment of the Guaranteed Royalties. Plaintiff nevertheless reserves the right to seek Earned Royalties in addition to the Guaranteed Royalties, should summary judgment on its behalf be denied. See ECF No. 67, p. 15; ECF No. 81, p. 3.

Fourth, Shadow Beverages argues that enforcing the acceleration clause so as to award American Outdoorsman all of the lost Guaranteed Royalty payments provided for in the Agreement would give American Outdoorsman a double recovery. To support its argument, Shadow Beverages cites to two cases that stand for the proposition that in a commercial lease a landlord must elect either repossession and actual damages or acceleration of the balance due, and that allowing a lessor to collect under an acceleration clause at the same time it has repossessed the property and rented to another tenant would be unjust. See Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc., 2010 WL 4929076, at *6; Grakelow v. Kidder, 95 Pa. Super. 250, 256 (1928). Shadow Beverages then concludes that it would be unjust to permit American Outdoorsman to both repossess the trademark property and collect future royalty payments. ECF No. 77, p. 7. The Court, however, has already found that the Guaranteed Royalties that American Outdoorsman seeks to recoup are not future royalty payments as Shadow Beverages interprets them but rather are bargained for terms of the Agreement that compensate American Outdoorsman for giving Shadow Beverages the right to use American Outdoorsman's name and logo. The fact that Shadow Beverages did not avail itself of that opportunity does not deprive American Outdoorsman of the benefit of its bargain which was ten years of Guaranteed Royalty payments. As stated by Mr. Rothwell at his deposition, that's why they're called *guaranteed* payments. ECF No. 68-11, p. 28. See Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 168-69 (3d Cir. 2001) (applying the reasoning of cases that found that minimum or guaranteed royalty payments "protect the licensor/supplier from the possibility of the failure of the licensee/buyer to use reasonable or best efforts"); Helpin v. Trustees of Univ. of Pa., 608 Pa. 45, 50, 10 A.3d 267, 270 (2010), *quoting* Lambert v. Durallium Products Corp., 364

15

Pa. 284, 72 A.2d 66, 67 (1950) ("[t]he purpose of a damage award is to place the non-breaching party 'as nearly as possible in the same position [it] would have occupied had there been no breach'"); Ferrer v. Trustees of Univ. of Pa., 573 Pa. 310, 341, 825 A.2d 591, 610 (2002), *quoting* Taylor v. Kaufhold, 368 Pa. 538, 84 A.2d 347, 351 (1951) (the non-defaulting party is entitled to "whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty").

Moreover, Shadow Beverages' argument that American Outdoorsman would benefit from a double recovery is necessarily contingent on American Outdoorsman having entered into a new agreement with a new licensee. Not only has American Outdoorsman represented that no such agreement has been entered into but Shadow Beverages has not pointed to any evidence to support a contrary finding. See ECF No. 81, p. 5. As such, Shadow Beverages cannot escape the acceleration clause contained in the Agreement by arguing American Outdoorsman would enjoy a double recovery.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that, as evidenced by the plain language of the Agreement and giving effect to all of its terms, the only reasonable interpretation of Paragraph 23(g) is that the parties intended that upon termination of the Agreement by American Outdoorsman due to Shadow Beverages' default, all unpaid Guaranteed Royalties itemized in the Agreement for the ten year Contract Period contemplated by the parties were fully earned and thus are owed to American Outdoorsman. Accordingly, American Outdoorsman's Motion for

Summary Judgment, ECF No. 65, will be granted and Shadow Beverages' Motion for Partial Summary Judgment, ECF No. 61, will be denied.

    A separate Order will follow.

                                                      /s/ Maureen P. Kelly
                                                      MAUREEN P. KELLY
                                                      CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: December 19, 2014

cc:      All counsel of record via CM/ECF